[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (No. 107)
CT Page 4849
This case involves an antistacking provision contained in Connecticut's uninsured and underinsured motorist coverage statute, Conn. Gen. Stat. § 38a-336. Sec. 38a-336 (d) provides that, "If any person insured for uninsured and underinsured motorist coverage is an occupant of an owned vehicle, the uninsured and underinsured motorist coverage afforded by the policy covering the vehicle occupied at the time of the accident shall be the only uninsured and underinsured motorist coverage available." This provision plainly means that an insured person who is injured while occupying a vehicle that he owns which is covered by one uninsured and underinsured motorist policy cannot claim benefits under a second, unrelated uninsured and underinsured motorist policy. Both this unambiguous text and the policy language in question preclude the recovery which the plaintiff seeks here.
The plaintiff, Michael J. DeBenedet, commenced this action in 1998 against the defendant, Hartford Fire Insurance Company ("Hartford"), seeking benefits under an uninsured and underinsured motorist insurance policy between the parties. DeBenedet alleges in his complaint that on June 9, 1996, while operating a motorcycle, he was seriously injured by an underinsured motorist He claims that he has exhausted the tortfeasor's liability insurance policy and now seeks underinsured motorist benefits from Hartford.
On January 11, 2000, Hartford filed the motion for summary judgment now before the court. For purposes of this motion, Hartford does not contest DeBenedet's injuries or the exhaustion of the tortfeasor's policy. Rather, it contests coverage. The motion was heard on April 3, 2000. Following argument, the parties were allowed to file supplemental memoranda of law by April 24, 2000, but neither party ultimately chose to file a supplemental memorandum.
The evidence submitted by the parties establishes that DeBenedet owned the motorcycle that he occupied at the time of the accident. The motorcycle was covered by an uninsured and underinsured motorist policy issued by Progressive Insurance Company.
DeBenedet had additionally purchased a second uninsured and underinsured motorist policy. That second policy is the one in question here, issued by Hartford. The Hartford policy was issued after January 1, 1994, the effective date of P.A. 93-297, An Act Concerning Automobile Insurance Reform, now codified in relevant part in Conn. Gen. Stat. § 38a-336 (d). DeBenedet takes the position that, CT Page 4850 whatever the provisions of § 38a-336 (d) may be, the language of the Hartford policy itself affords him a right to recovery. Given this position, the policy must now be reviewed with some care.
The policy consists of a number of standard policy terms and conditions intermixed with specific modifications of those terms and conditions governing policies issued in Connecticut, The standard terms and conditions ostensibly applicable to the present case are almost entirely obliterated by the Connecticut modifications. It will be helpful to describe the standard terms and conditions first. Under the standard terms stated in the policy, the "insured" is "You for any covered `auto." (Sec. II(1)(a).) A "General Condition" applicable to this standard term, headed "Other Insurance," provides that, "For any covered `auto' you own, this Coverage Form provides primary insurance." (Sec. III(B)(5)(a).) A schedule incorporated in the policy lists one "covered auto": a 1994 Ford, which the evidence establishes is a dump truck owned by DeBenedet's business.
The policy's standard terms and conditions applicable to this case are, however, almost completely superceded by a Connecticut Uninsured and Underinsured Motorists Coverage Endorsement. The Endorsement is headed by a warning in block letters: "THIS ENDORSEMENT CHANGES THEPOLICY. PLEASE READ IT CAREFULLY." The endorsement changes the definition of "insured" to include "you." (Endorsement § B(1).) That definitional change is followed by § E, entitled "CHANGES INCONDITIONS." Sec. E(1) replaces the standard condition of the policy governing "other insurance." That replacement language specifically provides that, "with respect to `bodily injury' to an `insured' while: (1) `[o]ccupying' a vehicle owned by that `insured', only the Uninsured/Underinsured Motorists Coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply." (Endorsement § E(1)(b).)
DeBenedet has tried mightily to construe the Endorsement language just quoted as being ambiguous, hoping then to rely on the legal maxim that ambiguous provisions in an insurance policy are to be strictly construed against the company that drafted them. But as strenuous as DeBenedet's efforts may be, he runs up against one insuperable obstacle: the policy language simply is not ambiguous. It clearly states, just as the governing statute provides, that if an insured is injured while occupying a vehicle that he owns, "only the Uninsured/Underinsured Motorists Coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply." This unambiguous provision plainly precludes the recovery that DeBenedet seeks here. CT Page 4851
DeBenedet grasps at one additional straw. In addition to issuing the policy, Hartford provided DeBenedet with a four-page document entitled "Informed Consent Form — Connecticut." This Consent Form provides, as DeBenedet points out, that, "If your damages exceed the amount of the at fault person's insurance or other payments, your UIMC coverage will be available for damages not paid." If this single sentence were to be read in a vacuum, DeBenedet would have a point. Such a reading would, however, be wildly inappropriate. The Consent Form is not the policy, and no reasonable insured would confuse it with the policy. The policy quite obviously provides a myriad of terms and conditions that the Consent Form does not. As mentioned, the plain language of the policy expressly — and unambiguously — governs the very situation now at hand. If the Consent Form were to go into this level of detail, there would be no point in drafting the policy, because the Consent Form would be the policy. Again, no reasonable person would expect that to be the case.
For these reasons, the recovery which DeBenedet seeks is precluded both by the governing statute and by the unambiguous language of the policy upon which he relies.
The motion for summary judgment is granted.
BLUE, JUDGE.